U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

OCT 2 7 2010

TONY R. MOORE, CLERK
BY_____
         DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **OLYMPIA MINERALS, LLC** | **CIVIL ACTION NO. 5:10-cv-00073** |
| **VERSUS** | **JUDGE WALTER** |
| **JJ-CC LIMITED d/b/a GRYNBERG PETROLEUM COMPANY, JACK J. GRYNBERG and CELESTE C. GRYNBERG** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

Before this Court is a Motion for Partial Summary Judgment [Doc. # 14] filed by Plaintiff, Olympia Minerals, LLC ("Olympia"), pursuant to Federal Rule of Civil Procedure 56. Defendants, JJ-CC Limited d/b/a Grynberg Petroleum Company, Jack J. Grynberg, and Celeste C. Grynberg (collectively "Grynberg"), oppose Olympia's motion. For the reasons assigned herein, Plaintiff's motion for partial summary judgment is **GRANTED**.

## STATEMENT OF THE FACTS

Defendants do not contest Plaintiff's history of the facts regarding the leases and the well at issue. [Defendant Memorandum at 1]. Therefore, the Court adopts those facts, as quoted, in relevant part, below:[1]

"On February 22, 1973, Boise Southern Company, as lessor, and W.C. Nabors, as lessee, entered into a mineral lease covering acreage located in DeSoto and Sabine Parish, Louisiana

---

[1] Defendants did object to the final sentence of plaintiff's factual background. Accordingly, that sentence has not been included.

1

(the "1973 Lease"). ...

"In January of 1978, the Boise Southern B-5 No. 1 Well, bearing Serial Number 157100 (the "Boise Well"), was successfully drilled and completed as a gas well on the acreage covered by "Lease #5," specifically in the Southeast quarter of Section 32, Township Nine (9) North, Range Twelve (12) West, Sabine Parish, Louisiana (the "160 Acres"). The 160 Acres and the operating interest in the Boise Well were assigned to JJ-CC, Limited on June 1, 1983. Thus, the property affected by the 1973 Lease at issue in this case consists of 160 acres, being the Southeast quarter of Section 32, Township Nine (9) North, Range Twelve (12) West, Sabine Parish, Louisiana. ...

"Records kept by the Louisiana Department of Natural Resources show that, between September of 1978 and August of 1999, the Boise Well was productive. According to its production records, the last recorded date of production from the Boise Well is August of 1999.

"The interest of Olympia Minerals in the 160 Acres can be traced back to 1984. Olympia Minerals is the successor to Sonat Minerals, Inc. by conversion from a corporation to a limited liability company and by name changes from Sonat Minerals, Inc. to El Paso Energy Minerals, Inc. to El Paso Energy Minerals, LLC to Olympia Minerals, LLC. El Paso Energy Minerals, LLC was acquired by the principals of Olympia Minerals on August 29, 2003. Sonat Minerals, Inc. ("Sonat Minerals"), Olympia Minerals predecessor-in-interest in the 1973 Lease, acquired its rights to the 1973 Lease from Boise Southern Company ("Boise Southern") in 1984. The transfer of the 1973 Lease was part of a series of conveyances between the affiliates of Sonat, Inc. and Boise Cascade Corporation, covering a large amount of immovable property, including the property located in Sabine Parish affected by the 1973 Lease. These conveyances are collectively

2

referred to herein as the "1984 Conveyances." As part of this transaction, mineral servitudes covering the subject acreage were granted in favor of Sonat Minerals (the "Sonat Servitudes"). The Sonat Servitudes were made subject to all prior recorded leases, including the 1973 Lease. Also as part of the 1984 Conveyances, Sonat Minerals was assigned all of lessor's rights under these existing mineral leases covering the subject property. This assignment included the 1973 Lease.

"Since 2003 when Olympia Minerals became the lessor under the 1973 Lease, Olympia Minerals has never received any royalty or other consideration from defendants herein, JJ-CC Limited d/b/a Grynberg Petroleum Company, Jack J. Grynberg or Celeste C. Grynberg, which is attributable to actual production of minerals from acreage covered by the 1973 Lease. On several occasions between 1999 and 2009, purported "shut-in royalty" payments were made on behalf of Grynberg Petroleum Company to Olympia Minerals or its predecessors. At the direction of Michael Lewis, president of Olympia Minerals, purported "shut-in royalty payments" made by CCG, LLC on December 16, 2008 and December 8, 2009 to Olympia Minerals were not accepted and were returned to Charles R. Minyard, counsel for Grynberg Petroleum Company. Thus, no payments made by any defendant to Olympia Minerals have been retained in over two years." [Plaintiff Memorandum at 1-3].

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56 (c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91

3

L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1355-56 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of

the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## DISCUSSION

At issue in this partial motion for summary judgment is whether the 1973 Lease has terminated. Olympia asserts that the 1973 Lease has terminated per its provisions due to a lack of production or royalty payments. Defendants do not dispute the facts on which the 1973 lease may have terminated. Instead, Defendants allege that they have been acting in accordance with a Compliance Order from the Louisiana Office of Conservation and that if the 1973 lease is terminated then so too is Olympia's mineral servitude in the property.

The 1973 Lease announces the duration of the lease as follows:

> Subject to the provisions herein contained, this lease shall remain in force for a term of five (5) years from the date hereof (hereinafter called the "primary term"), and as long thereafter as oil or gas is produced hereunder, or any operation is conducted, or any payment is made, or any condition exists, which as hereinafter provided continues this lease in force.

[Plaintiff Exhibit A at 2]. As the lease was signed on February 22, 1973, the primary term extended to February 22, 1978. The 1973 Lease's provisions are divided into two categories – nonproductive term ("term of this lease prior to the discovery and production of oil or gas from the leased premises or acreage pooled therewith") and productive term ("term of the lease following the discovery and production of oil and gas from the leased premises or acreage pooled therewith"). [Id.]. The Boise Well began production in September of 1978, thus only the clauses of the 1973 Lease applicable to the productive term are relevant for determining whether the 1973 Lease has terminated.

The 1973 Lease provides two applicable methods of perpetuating the duration of the lease beyond the primary term after a break in production–a cessation of production clause and a shut-in royalty clause.[2] Under either clause, however, the 1973 Lease has terminated.[3]

Under the cessation of production clause, to prevent termination of the lease after production ceases "from any cause," the lessee must either pay a semi-annual rental payment, resume or restore production, or begin additional operations to restore production. [Id. at 6]. For the rental payment option, the 1973 Lease specifies:

> Lessee may continue to maintain this lease as to such block for consecutive period of six (6) months each during the Productive Term, and, subject to the further provisions hereof, for a period of three (3) years after the primary term of this lease, by paying Lessor on or before the end of each six (6) months period one-half of the fixed annual rental for all of the leased premises included in such block.

[Id.]. By the terms of this provision, the duration of the 1973 Lease could only be extended by cessation of production payments for three years after the end of the Primary Term, which would be 1981. At that point the 1973 Lease would not afford the lessee a method to extend the lease, and, consequently, the lease would terminate upon the cessation of production.

Alternatively, the duration of the 1973 Lease could be extended via the shut-in royalty clause.[4] Olympia asserts that this provision should apply as recent checks sent by Grynberg reference

---

[2] Considering production has ceased, the lease can only continue pursuant to a provision so providing.

[3] The 1973 Lease also contains a force majeure clause that tolls the expiration of the lease when production is interrupted or delayed due to fire, storm, flood, lack of labor, etc., [Plaintiff Exhibit A at 9], but neither party has asserted facts to suggest this clause is at issue.

[4] These two clauses (cessation of production and shut-in royalty) are not interchangeable. The shut-in royalty clause applies only in specific circumstances. The court's use of alternatively here merely reflects that it is unclear which clause would be applicable to the facts at hand. Thus the court's analysis examines both clauses to determine whether the 1973 Lease would survive under any set of circumstances.

shut-in royalties. [Plaintiff Memorandum at 5]. The 1973 Lease's shut-in royalty clause provides that if lessee is unable to produce "because of a lack of market or marketing facilities" then lessee can make a payment to lessor within 90 days to extend the lessee's rights under the lease for one year. [Plaintiff Exhibit A at 11]. However, the 1973 Lease clearly states: "In no event, however, shall Lessee's rights be so extended by such payments and without drilling operations on or production from such block or block for more than three (3) years beyond the primary term." [Id.]. Since the primary term ended in 1978, shut-in royalty payments could only be made until 1981.

The 1973 Lease simply does not provide for extending its duration past 1981 without production. Neither the cessation of production clause nor the shut-in royalty clause provides the lessee an opportunity to continue the terms of the lease for more than three years after the end of the primary term (1978) by paying a fixed sum to the lessor. On its terms alone, then, the 1973 Lease terminated in 1999 when the Boise Well ceased production. Any payments offered by Defendants or their predecessors would be ineffective at extending the lease since the provisions of the 1973 Lease specify that payments can only extend the lease for up to three years after the primary term. The end of production was twenty-one years after the end of the primary term, thus those provisions are inapplicable. Furthermore, any waiver created by an acceptance of payments by Plaintiff or its predecessors is terminated by Olympia's refusal to accept "shut-in royalty" payments from Grynberg since 2007. Consequently, the 1973 Lease has terminated per its own provisions.

Defendants do not contest the facts upon which the court concludes that the 1973 Lease has terminated. Instead, they vaguely assert that they have been acting in compliance with an order from the Louisiana Office of Conservation and that Olympia has no interest in a mineral servitude to bring this action. Neither point has merit.

Compliance with an Office of Conservation Compliance Order does not affect whether the terms of the 1973 Lease have terminated. The Compliance Order only states that the Boise Southern B 5 No. 001 well was found to be "in an abandoned condition," that the well has "no future utility," and that Grynberg must plug and abandon the well and remove all equipment. [Defendant Exhibit 1]. While compliance with this order may affect whether Grynberg had a right to be on the property, it does not affect the terms of the 1973 Lease in determining whether that lease has terminated.

Further, whether Olympia's mineral servitude is erased by termination of the lease is not at issue in this motion for partial summary judgment. Even if it was, Defendants have stipulated that Plaintiff has an interest in the property: "Olympia Minerals, LLC owns a mineral servitude covering the Property; accordingly, if the 1973 Lease is found to be in force and effect as it relates to the Property, Olympia Minerals would be the current lessor of the 1973 Lease." [Plaintiff Exhibit B]. "A stipulation has the effect of a judicial admission or confession, which binds all parties and the court." *Winford v. Conerly Corp.*, 897 So.2d 560, 566 (La. 2005). "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). Grynberg cannot concede that Olympia has an interest in the property then turn around and demand that Olympia show "that it has any interest in maintaining this action or that it is the real party at interest in this action." [Defendant Memorandum at 2]. Therefore, Defendants' arguments are insufficient to override the conclusion that the 1973 Lease has terminated.

## CONCLUSION

Accordingly, for the reasons stated above, plaintiff's motion for partial summary judgment is **GRANTED**. As a matter of law, the 1973 Lease has terminated.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE